UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER HARALAMBOUS, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:12-CV-1132 (JCH) |
| | : | |
| v. | : | |
| | : | |
| BRIAN HUBBS and | : | |
| CITY OF MIDDLETON, | : | |
|     Defendants. | : | OCTOBER 30, 2013 |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 27)**

**I.   INTRODUCTION**

Plaintiff Christopher Haralambous ("Haralambous") alleges that defendants Brian Hubbs ("Hubbs") and the City of Middletown ("Middletown") violated his rights under the Fourth Amendment of the United States Constitution by subjecting him to unreasonable, excessive, and deadly force.  Haralambous seeks relief under sections 1983 and 1988 of title 42 of the United States Code.  Defendants have moved for summary judgment (Doc. No. 27) on these claims.

**II.   STANDARD OF REVIEW**

A motion for summary judgment is properly granted only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir.2011). Thus, the role of the district court in deciding a summary judgment motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." Id.  In making this determination, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir.2013).

1

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir.2010). Once the moving party has satisfied that burden, to defeat the motion "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir.2009) (quoting Fed.R.Civ.P. 56(e)). "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co., 421 F. App'x 52, 53 (2d Cir.2011); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir.2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (stating that the non-moving party must point to more than a mere "scintilla" of evidence in its favor). "[U]nsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.2000).

### III.   FACTUAL BACKGROUND

On January 31, 2011, Hubbs shot Haralambous in the arm while arresting him. Defendants' Local Rule 56(a)(1) Statement ("Def.'s L.R. 56(a)(1) Stmt") (Doc. No. 27-2) ¶ 8; Plaintiff's Local Rule 56(a)(2) Statement ("Pl.'s L.R. 56(a)(2) Stmt.") (Doc. No. 28-1) § A ¶ 8; § B ¶ 1. Haralambous alleges that as he was turning into the driveway of his parents' home, two or three "plain cars" pulled in behind him, blocking him in. Pl.'s L.R. 56(a)(2) Stmt. § B ¶¶ 1-2. Three men, dressed in plainclothes, exited from the cars. Id. at ¶ 3. One of the men, later identified as Hubbs, had a gun in his hand. Id. Haralambous states that the men ran to his car, began to kick it, attempted to break one of its windows, and shouted at him to exit the car. Id. at ¶¶ 3-5. Hubbs, Haralambous

claims, fired one shot directly into the window on the driver's side of the car. Id. at ¶ 7. Hubbs then pointed his gun at Michael Steady ("Steady"), the operator of a snow plow who had been plowing snow in from the driveway when Haralambous arrived, and told him not to move his plow. Id. Upon "roll[ing] out" of his car, Haralambous alleges that three men grabbed him, threw him on a snow bank, and began punching and kneeing him. Id. at ¶ 8. Haralambous' mother questioned the men's actions, at which point they ceased hitting Haralambous. Id. at ¶ 9. The men handcuffed both Haralambous and his mother. Id. at ¶ 10. Haralambous claims that one of the men then approached Steady, asked him if he had seen Haralambous try to run him over with his car, and threatened to arrest Steady if he did not give a statement in support of the men. Id. at ¶ 11.

The parties agree that Hubbs, a Middletown police officer, had been assigned to the State-Wide Narcotics Task Force ("SNTF") and was on duty as a member of the SNTF at the time of Haralambous' arrest. Def.'s L.R. 56(a)(1) Stmt. at ¶¶ 2, 15; Pl.'s L.R. 56(a)(2) Stmt. § A, ¶¶ 2, 15. Haralambous, however, asserts that no evidence that SNTF was part of the Connecticut State Police exists. Pl.'s L.R. 56(a)(2) Stmt. § A, ¶ 2.[1] Haralambous also denies that an officer was injured during the arrest as a result of being struck by Haralambous' car. Id. at ¶ 7.

Haralambous does not dispute, that prior to this arrest, the SNTF was investigating him in connection with the enforcement of laws outlawing marijuana

---

[1] This claim, however, is controverted by the Affidavit of Sergeant Hubbs, as well as by the statute creating the SNTF. Defs'. Ex. A, ¶4; Conn. Gen. Stat. § 29-176(a) (2011). Because Haralambous has not cited to any affidavit or other admissible evidence to controvert this readily apparent fact, the court will deem this fact admitted by Haralambous. D. Conn. L. Civ. R. 56(a)(3) ("Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted." Id.)

3

distribution.  Def.'s L.R. 56(a)(1) Stmt. at ¶ 4; Pl.'s L.R. 56(a)(2) Stmt. § A, ¶ 4.  The parties further agree that Haralambous did not know of and had not met Hubbs prior to January 31, 2011; that Haralambous is unaware of the police training Hubbs received; and that Haralambous has no personal knowledge of Hubbs' disciplinary history.  Def.'s L.R. 56(a)(1) Stmt. at ¶¶ 12-14; Pl.'s L.R. 56(a)(2) Stmt. § A, ¶ 12-14.

Additionally, it is undisputed that, as a result of Hubbs discharging his weapon during Haralambous' arrest, Hubbs became the subject of an investigation conducted by the Connecticut State Police Internal Affairs Unit.  Def.'s L.R. 56(a)(1) Stmt. (Doc. No. 27-2) ¶ 16; Pl.'s L.R. 56(a)(2) Stmt. (Doc. No. 28-1) § A, ¶ 16.  Haralambous, however, contests defendants' claim that Hubbs was "exonerated . . . of any wrongdoing with respect to his actions during [Haralambous'] arrest" for lack of documentation from the Internal Affairs Unit.[2]  Pl.'s L.R. 56(a)(2) Stmt. (Doc. No. 28-1) § A, ¶ 17; Def.'s L.R. 56(a)(1) Stmt. at ¶ 17.

IV. Discussion

    A. <u>Violation of 42 U.S.C. § 1983</u>

The defendants in this case move for summary judgment, arguing that Haralambous cannot establish that he was denied a right, privilege, or immunity secured by the Constitution.  Haralambous, however, has alleged that there was a

---

[2] Haralambous moves to strike defendants' claim that Hubbs was exonerated because it is unsupported by documentation from the Internal Affairs Unit. Pl.'s L.R. 56(a)(2) Stmt. §A, ¶ 17. However, defendants do cite an affidavit from Hubbs in support of their claim. Def.'s L.R. 56(a)(1) Stmt. ¶ 17. This citation is sufficient for the purpose of Local Rule 56(a)(3), which requires only that each material fact in a Local Rule statement "be followed by a specific citation to (1) the affidavit of a witness competent to testify as to facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)(3).  Hubbs is a witness who would be competent to testify at trial, so his affidavit is evidence of the claim that he was exonerated for purposes of summary judgment.

violation of his Fourth Amendment right against unreasonable seizure of his person when Officer Hubbs shot him.

>   Haralambous brings this action pursuant to section 1983, which provides:
>
>   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1979) (internal quotations omitted) (citing Baker v. McCollan, 443 U.S. 137, 144, n.3 (1989).

A claim for excessive force is evaluated under the Fourth Amendment standard of reasonableness. See, e.g., Graham, 490 U.S. 386, 397; Anderson v. Branen, 17 F.3d 552, 558-59 (2d Cir. 1994). In determining whether, based on the circumstances confronting the arresting officers, the force used by the officers was "objectively reasonable." Id. This determination is fact-specific, and "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. 386, 396. In conducting this inquiry, the fact finder must evaluate the evidence in the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

Also, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight." Id. (internal quotations omitted) (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968).  Courts must allow for the fact "that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Graham, 490 U.S. 386, 396-97.

Viewing the evidence in the light most favorable to Haralambous, the non-moving party, as the court is required to do in evaluating a motion for summary judgment, the court concludes that there are genuine issues of material fact in dispute regarding the force applied to Haralambous at the time of his arrest.  Haralambous has offered evidence that he was sitting in his car when the officers ran up and began shouting at him to get out.  Pl.'s L.R. 56(a)(2) Stmt. § B at ¶¶ 3-4.  He has also offered evidence that he responded by asking what was going on before Hubbs shot him.  Id. at ¶¶ 5-6. Differently, the defendants offer evidence that Haralambous drove his car into an officer, injuring him, a claim Haralambous denies.  Def.'s L.R. 56(a)(1) Stmt. at ¶ 7; Pl.'s L.R. 56(a)(2) Stmt. § A at ¶ 7.  Therefore, an obvious material factual dispute exists as to whether Hubbs applied force in excess of an amount that was objectively reasonable in effectuating Haralambous' arrest.  The court concludes as such, because a jury will need to determine, among other things, whether an officer was struck with Haralambous' car in order to decide whether Hubbs' use of force was reasonable. Applying the "objectively reasonable" standard as articulated in Graham, and viewing the evidence in the light most favorable to Haralambous, the non-moving party, a reasonable finder of fact could find that Hubbs' conduct constituted excessive force in

violation of the Fourth Amendment, and therefore defendants' Motion for Summary Judgment with respect to Haralambous' claim of a violation of section 1983 is denied.

### B.	City of Middletown's Liability Under Monell

Defendants next argue that Haralambous cannot establish that Middletown is liable under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  The Supreme Court has required that "a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal policy or custom that caused the plaintiff's injury."  Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403 (1997) (internal quotations omitted). The Second Circuit has specified that a plaintiff must prove "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citing Monell, 436 U.S. 658, 694).  "In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy." Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)

Haralambous appears to be trying to establish that Middletown is liable "by showing that a municipal policy or custom existed as a result of the municipality's deliberate indifference to the violation of constitutional rights, either by inadequate training or supervision." Russo v. City of Hartford, 341 F. Supp. 2d 85, 107 (D. Conn. 2004) (citing to Vann, 72 F.3d at 1049); see also Complaint at ¶ 8.  In order to convince a reasonable trier of fact of this, Haralambous would need to prove that "the municipality's failure to supervise or properly train its police force is so severe as to

constitute gross negligence or deliberate indifference to a plaintiff's rights." Sarus v. Rotundo, 831 F.2d 397, 401 (2d Cir. 1987) (internal quotations omitted) (citing Zhangi v. Incorporated Village of Old Brookville, 752 F.2d 42, 45 (2d. Cir. 1985)).  Haralambous has not put forth evidence to support such a finding by a reasonable jury.

First, it is clear from the record that Sergeant Hubbs was not acting as an employee of Middletown at the time he shot Haralambous.  In setting up the SNTF, the Connecticut legislature indicated the scope of liability for the officers on the task force.

> For purposes of indemnification of such personnel and its municipalities against any losses, damages or liabilities arising out of the service and activities of the task force, personnel while assigned to, and performing the duties of, the task force shall be deemed to be acting as employees of the state.

Conn. Gen. Stat. § 29-177(c).  The legislature has made it clear that the officers on the SNTF are to be considered state employees in situations such as this.  As such, Sergeant Hubbs was off-duty in terms of Middletown at this time.

In a similar case, the court held that "[t]he typical failure to supervise claim involves conduct performed while on duty."  Zainc v. City of Waterbury, 603 F. Supp. 2d 368, 381 (D. Conn. 2009).  Further, the Zainc court indicated that it "fails to see how the City could have a duty to supervise the conduct of all off-duty employees."  Id.  Here, similarly, Middletown could not have a duty to supervise Sergeant Hubbs' while he was acting as a state employee.  This is further shown, because a plaintiff "must prove in the end that the . . . defendants' inadequate supervision actually caused or was the moving force behind the alleged violations."  Reynolds v. Guiliani, 506 F. 3d 183, 193 (2d Cir. 2007).  Here, there is no question that Middletown was not even supervising Sergeant Hubbs at the time of the shooting, therefore there is no way it could have been the "moving force behind the alleged violations."  Id.

8

Further, the standard for a deliberate indifference is a high one in the Second Circuit. In order to show that more supervision was required, Haralambous would need to "show that the need for more or better supervision to protect against constitutional violations was obvious." Vann, 72 F.3d at 1049. This can be shown through "proof of repeated complaints of civil rights violations . . . followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Id. Here, Haralambous has only alleged that "Hubbs had been written up many times by supervisors and/or fellow officers for rash, undisciplined and unprofessional conduct." Pl.'s Compl. at ¶ 8. Haralambous has offered no evidence of this at this summary judgment stage. Haralambous has failed to come forward with evidence upon which a reasonable finder of fact could find a need for more supervision by Middletown. Even had there been such a need, though, the evidence showing that Hubbs was an employee of the State of Connecticut at the time of the arrest precludes any duty on the part of Middletown from having to supervise Hubbs while he was a part of the SNTF.

Haralambous has also failed to come forward with evidence that Middletown failed to train Hubbs properly. In order to convince a reasonable finder of fact that Hubbs was improperly trained, Haralambous would need to produce evidence that would "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Wray v. City of New York, 490 F. 3d 189, 196 (2d Cir. 2007) (internal quotations omitted) (quoting Amnesty Am. v. Town of W. Hartford, 361 F. 3d 113, 129 (2d Cir. 2004). Here, Haralambous has not produced any evidence of a single deficiency in Middletown's training of Hubbs. Therefore, no reasonable jury could

9

conclude that Middletown is liable based on its training, or lack thereof, of Sergeant Hubbs.

Finally, Middletown cannot be liable because of a policy that it employed.  Under Monell, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsive under § 1983." Monell, 436 U.S. 658, 694.  Here, Haralambous has not set forth any policies or customs of Middletown that can be said to have inflicted injury upon him.  There is no evidence upon which a jury could find that a policy of Middletown caused Haralambous' injury.

Based on the lack of evidence, the court grants the Defendants' Motion for Summary Judgment as it relates to any of Haralambous' claims against Middletown.

    C.    Eleventh Amendment

Defendants next argue that the Eleventh Amendment bars this suit against Sergeant Hubbs.  The Eleventh Amendment bars federal courts from hearing actions brought by a private citizen against a state unless that state consents to the suit. Alabama v. Pugh, 438 U.S. 781, 781 (1978).  The Supreme Court has held that suits against state officials are really suits against the state itself, which invokes Eleventh Amendment protection.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Therefore, insofar as any of Haralambous' claims are against Hubbs in his official capacity, they are barred by the Eleventh Amendment.  It is also possible, however, that Haralambous has sued Hubbs in his individual capacity.

"Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."  Kentucky v. Graham, 473 U.S.

10

159, 165 (1985). "Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Id. (internal quotations omitted) (quoting to Monell, 436 US 658, 690, n. 55). Oftentimes, it is necessary for a court to determine which type of claim a plaintiff is bringing. Therefore, "when the face of a complaint fails to state clearly whether a government official is being sued in his official capacity, or his individual capacity, or both, courts look to [t]he course of proceedings to determine the nature of the liability to be imposed." Frank v. Relin, 1 F.3d 1317, 1326 (2d. Cir. 1993) (internal quotations omitted) (quoting Kentucky, 473 U.S. 159, 165, n.14); see also Kentucky, 473 U.S. 159, 165, n.14 ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." (quoting Brandon v. Holt, 469 U.S. 464, 469 (1985).))

In looking at the course of proceedings in this case, although the issue is close, the court is persuaded that Haralambous intended to sue Hubbs, at least partly, in his individual capacity. Haralambous' Complaint sought punitive damages,[3] which the Second Circuit has found to be indicative of an individual capacity suit. See Yorktown Medical Laboratory, Inc. v. Perales, 948 F.2d 84, 89 (2d. Cir. 1991) ("The following aspects of the present case attest to defendants' notice of individual capacity claims: Yorktown's complaint sought punitive damages, which are only available in individual capacity suits. . . ."); see also Shabazz v. Coughlin, 852 F.2d 697, 700 (2d. Cir. 1988) ("Notwithstanding the complaint's ambiguous language and the defendants' numerous

---

[3] Pl.'s Compl. at p. 3

11

affirmative defenses, Shabazz's request for punitive and compensatory damages, coupled with the defendants' summary judgment motion on qualified immunity but not Eleventh Amendment grounds, suggests that the parties believed that this action is a personal capacity suit.")  Here, different from Shabazz, the defendants have moved for summary judgment on Eleventh Amendment grounds.  However, viewing the course of proceedings in the light most favorable to the non-moving party (Haralambous); the court finds that the suit against Hubbs could be against him in his individual capacity. That Haralambous is seeking punitive damages is strong enough evidence to support his contention that the suit is against Hubbs in his individual capacity.

Defendants also argue that any judgment against Hubbs is likely to be paid from the State treasury and therefore must be barred by the Eleventh Amendment.  They bolster this argument by referring to section 29-177(c) of the Connecticut General Statutes, which indemnifies SNTF personnel for damages or liability stemming from their service on the task force.  The language of this section merely indicates that members of "the task force shall be deemed to be acting as employees of the state." Conn. Gen. Stat. § 29-177(c).  Because they are employees of the state, they can be sued in their individual capacity as well as their official capacity.  See e.g. Frank, 1 F.3d 1317 (2d. Cir. 1993).  It still remains to be determined, however, whether a suit against Hubbs in his individual capacity would run afoul of the Eleventh Amendment.

The Supreme Court has indicated that suits against defendants in their individual capacities are not barred by the Eleventh Amendment.  "We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits. . . ." Hafer v. Melo, 502 U.S. 21, 31

(1991).  Here, because the court construes the complaint such that Haralambous has sued Hubbs in his individual capacity, the "Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability" on him.  Id. at 30-31, 112 S. Ct. 358, 364 (internal quotations omitted) (quoting Scheuer v. Rhodes, 416 U.S. 232, 238 (1974).  The cases cited by defendants were all decided prior to Hafer and do not deal with the distinction between suits brought against state actors in their individual capacities as opposed to their official capacities.  Further, the language of section 29-177(c) merely indicates that, for purposes of indemnification, SNTF members will be treated as state employees.  Just as any other state employee can be sued in their individual capacity, so could Hubbs.  It is clear that the suit against Hubbs in his individual capacity is not barred by the Eleventh Amendment.  Hafer, 502 U.S. 21, 31.

Therefore, the court denies the defendants' Motion for Summary Judgment as it applies to Haralambous' claims against Hubbs in his individual capacity.  To the extent Haralambous sought to assert a claim to money damages against Hubbs in his official capacity, however, the defendants' Motion for Summary Judgment is granted.

**V.     Conclusion**

For the foregoing reasons, the defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. The surviving cause of action is the claim against defendant Hubbs in his individual capacity.

**SO ORDERED.**

Dated at New Haven, Connecticut this 30th day of October, 2013.

        /s/ Janet C. Hall
        Janet C. Hall
        United States District Judge